UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAUI HOPE,<br><br>*Plaintiff*,<br><br>v.<br><br>EMBASSY OF THE UNITED STATES, DUSHANBE, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-654 (SLS)<br><br>Judge Sparkle L. Sooknanan |

## MEMORANDUM OPINION

Maui Hope is a not-for-profit organization based in Hawaii. In 2023, it sought to employ Shavkat Hoshimov, a citizen of Tajikistan. But after a consular officer interviewed Mr. Hoshimov, the officer denied his application for an H-1B visa. The officer concluded that Mr. Hoshimov had previously worked in the United States without authorization and willfully misrepresented the purpose of his visit under a B1/B2 visa. Maui Hope sued the Secretary of State and several consular officials to challenge the H-1B visa denial. The Defendants have moved to dismiss under the doctrine of consular nonreviewability. The Court grants that motion.

## BACKGROUND

### A. Statutory Background

"To be admitted to the United States, a noncitizen typically needs a visa." *Dep't of State v. Muñoz*, 602 U.S. 899, 903 (2024) (citing 8 U.S.C. § 1181(a)). The Immigration and Nationality Act (INA) "sets forth conditions for foreign nationals" to receive such visas. *Pietersen v. U.S. Dep't of State*, 138 F.4th 552, 555 (D.C. Cir. 2025) (quoting *ITServe All., Inc. v. DHS*, 71 F.4th 1028, 1031 (D.C. Cir. 2023)). Two types of visas are the so-called B1/B2 visa and H-1B visa. A

B1/B2 visa "allows individuals who have 'a residence in a foreign country which [they have] no intention of abandoning' to enter the United States 'for business or temporarily for pleasure.'" *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 6–7 (D.D.C. 2024) (alteration in original) (quoting 8 U.S.C. § 1101(a)(15)(B)). An H-1B visa is for "foreign workers" who will enter the United States "to perform services . . . in a specialty occupation" for a limited time. *Save Jobs USA v. DHS*, 664 F. Supp. 3d 143, 146 (D.D.C. 2023) (citing 8 U.S.C. § 1101(a)(15)(H)(i)(b)), *aff'd*, 111 F.4th 76 (D.C. Cir. 2024).

"[T]he INA grants consular officers exclusive authority to review applications for visas[.]" *Pietersen*, 138 F.4th at 556 (cleaned up). When an individual "makes application for a visa," that person must "establish that he is eligible to receive such visa." 8 U.S.C. § 1361. The INA lays out several grounds for visa ineligibility. *See id.* § 1182(a). Among them is "[m]isrepresentation." *Id.* 1182(a)(6)(C). Specifically, any individual who, "by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa . . . is inadmissible." *Id.* § 1182(a)(6)(C)(i).

B.   **Factual Background**

The Court draws the facts, accepted as true, from the Plaintiff's Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).

Mr. Hoshimov is a citizen of Tajikistan. Compl. ¶ 9, ECF No. 1. From 2007 to 2011, Mr. Hoshimov was in the United States on a student visa. Compl. ¶ 23. He attended a professional education center in Pennsylvania where he was educated in working with individuals with disabilities. Compl. ¶ 25. While there, he met Andrea Rogers, the Executive Director of Maui Hope. Compl. ¶¶ 1, 26. He eventually "develop[ed] close bonds" with Ms. Rogers and her family. Compl. ¶ 26.

In 2021, Mr. Hoshimov visited Ms. Rogers in Hawaii on a B1/B2 visitor visa. *See* Compl. ¶ 31. The purpose of that stay "was tourism, sightseeing, and visiting with friends." *Id.* While in Hawaii, Mr. Hoshimov "stayed in a private residence that was owned by Ms. Rogers and her husband." *Id.* During his stay, he communicated with assistants employed by Ms. Rogers "about how to better interact with" her son, an adult with autism—"but he was not employed or compensated for this in any way." Compl. ¶¶ 26, 32.

Mr. Hoshimov sought to return to the United States in 2022 pursuant to another B1/B2 visa. Compl. ¶ 34. Before being admitted, Customs and Border Protection (CBP) officers interrogated Mr. Hoshimov about the nature of his 2021 visit to the United States. Compl. ¶ 35. Mr. Hoshimov explained that "[h]e was given lodging at Ms. Rogers and her husband's private residence"; "was able to use their private vehicle for transportation, but had to pay for the gas himself"; and "ate with them for free as a guest." Compl. ¶ 36. This questioning resulted in a document, called a Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act, that was signed by both Mr. Hoshimov and the CBP officer. Compl. Ex. K at 65, ECF No. 1-1. By signing, Mr. Hoshimov agreed that his answers were "true and correct to the best of [his] knowledge" and represented "a full, true[,] and correct record of [his] interrogation." *Id.* According to the Sworn Statement, Mr. Hoshimov said that during his 2021 visit, he "provide[d] guidance and feedback to [Ms. Rogers'] staffers." *Id.* at 62. He also said that he stayed "[a]t the facility" during his visit, did not pay rent, and "was also given a company car" and food. *Id.* at 63. The Complaint alleges that the Sworn Statement is inaccurate because Mr. Hoshimov's statements "failed to explain the situation clearly" and "his answers were not properly recorded." Compl. ¶ 38. The Complaint suggests that these inaccuracies could be attributed to Mr. Hoshimov having been awake for over

3

thirty-six hours and "feeling sleep-deprived and exhausted" at the time of the interrogation. *Id.* Nevertheless, Mr. Hoshimov's entry to the United States was denied. Compl. ¶ 48.

Following this incident, Mr. Hoshimov and Ms. Rogers "discussed what a potential employment arrangement would look like." Compl. ¶ 49. And in January 2023, Maui Hope filed a Petition for a Nonimmigrant Worker on Mr. Hoshimov's behalf, seeking to secure him an H-1B visa. Compl. ¶ 50. But following a visa interview in Tajikistan, a consular officer denied Mr. Hoshimov's application. Compl. ¶ 52. The officer concluded that Mr. Hoshimov was inadmissible for having used "fraud or misrepresentation in obtaining a visa or entry to the United States"—*i.e.*, pursuant to 8 U.S.C. § 1182(a)(6)(C)(i). *Id.* The U.S. Embassy later explained that Mr. Hoshimov misrepresented that "he intended to engage on B-1/B-2 qualifying activities at the time of his admission on March 23, 2021 – when he actually intended to engage in unauthorized employment." Compl. ¶ 54.

### C.    Procedural Background

On March 6, 2025, Maui Hope sued the U.S. Embassy in Dushanbe, Tajikistan, as well as the Secretary of State and other U.S. diplomatic and consular officials. *See generally* Compl. Maui Hope sought review of "the merits of [the] consular officer's denial of a visa," alleging that the denial violated the Administrative Procedure Act. Compl. ¶¶ 1, 81–102. On May 30, 2025, the Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Maui Hope's claims are barred by the doctrine of consular nonreviewability. ECF No. 11. That motion is fully briefed and ripe for review. *See* Opp'n, ECF No. 15; Reply, ECF No. 16.

## LEGAL STANDARD

Under Rule 12(b)(6), a court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotations omitted). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## DISCUSSION

The Defendants contend that Maui Hope's claims are barred by the doctrine of consular nonreviewability. Mot. Dismiss 5. The Court agrees. Under the doctrine of consular nonreviewability, "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise."[1] *Saaveda Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999). But in the Complaint, Maui Hope straightforwardly asks the Court to review the consular officer's decision to withhold a visa from Mr. Hoshimov. The Complaint begins by stating that Maui Hope "brings this action to review the merits of a consular officer's denial of a visa." Compl. ¶ 1. And it requests that the Court "[v]acate" the visa denial and "[r]emand the matter to the U.S. Embassy in Dushanbe for further consideration and the entry of a new decision." Compl. ¶¶ C–D. The Court may not hear such a claim under the doctrine of consular nonreviewability.

In its Opposition, Maui Hope clarifies that its claims do "not rely on claims of consular bad faith or constitutional breaches." Opp'n 2. Instead, Maui Hope relies entirely on an alleged

---

[1] "[T]here are two 'narrow exceptions' to the doctrine: (1) when judicial review is express authorized by statute, or (2) if a noncitizen's exclusion burdens an American citizen's constitutional rights." *Pietersen v. U.S. Dep't of State*, 138 F.4th 552, 556 (D.C. Cir. 2025) (quoting *Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023)).

"procedural violation": that the consular official failed to adhere to the evidentiary standard prescribed by the Foreign Affairs Manual when determining Mr. Hoshimov's admissibility. Opp'n 2–3. According to Maui Hope, the doctrine of consular nonreviewability does not bar a court's review of a consular decision "to ensure that it was not made in violation of statutory or regulatory law or procedure." Opp'n 6.

Although Maui Hope purports to quote a decision from this District to support that proposition, the quoted language appears nowhere in that decision. Opp'n 6 (citing *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268 (2016)). Instead, *Nine Iraqi Allies* says essentially the exact opposite—that the doctrine of consular nonreviewability applies "even where it is alleged that the consular officer failed to follow regulations, where the applicant challenges the validity of the regulations on which the decision was based, or where the decision is alleged to have been based on a factual or legal error." 168 F. Supp. 3d at 290 (quoting *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 4 (D.D.C. 2009)). Indeed, based on the Court's review, the language quoted by Maui Hope seems not to appear in any decision issued by any federal court.[2]

Neither do the other cases Maui Hope cites lend it support. *See* Opp'n 6–7. *Ramizi v. Blinken* involved a challenge to a "period of . . . administrative processing," 745 F. Supp. 3d 244, 258 (E.D.N.C. 2024), which courts in this District (including this Court) have overwhelmingly distinguished from challenges to a grant-or-deny decision by a consular officer, *see Thein v.*

---

[2] On July 7, 2025, the Defendants filed a Reply in support of its Motion to Dismiss that flagged this discrepancy. Reply 4 ("It bears noting that the language Plaintiff purports to quote from the *Nine Iraqi Allies* case does not appear anywhere in that decision."). Yet counsel for the Plaintiff has taken no steps to correct the misrepresentation. The Court cautions counsel that such conduct may lead to sanctions and a referral to relevant bar authorities for "knowingly . . . mak[ing] a false statement of . . . law to a tribunal or fail[ing] to correct a false statement of . . . law previously made to the tribunal by the lawyer." Model Rules of Pro. Conduct r. 3.3(a)(1) (A.B.A. 2025).

*Trump*, No. 25-cv-2369, 2025 WL 2418402, at *7 & n.7 (D.D.C. Aug. 21, 2025) (collecting cases). And in the D.C. Circuit's recent decision in *Pietersen v. United States Department of State*, the Circuit held that "[w]hen plaintiffs launch *forward-looking* challenges to the lawfulness of regulations or policy governing consular decisions, courts may review them 'to assure that the executive departments abide by the legislatively mandated procedures.'" 138 F.4th at 555 (emphasis added) (quoting *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 801 (D.C. Cir. 1985)). The plaintiffs in that case had conceded that "their challenges to [the applicant's] prior visa denials are unreviewable under the consular nonreviewability doctrine." *Id.* Thus, Maui Hope's cited cases say nothing about whether the doctrine of consular nonreviewability bars claims that a consular officer's visa denial was the result of a failure to abide by Department of State regulations. And contrary to Maui Hope's assertion, there are cases from this District (in addition to *Nine Iraqi Allies*) stating that such procedural challenges are barred by the doctrine. *See Malyutin v. Rice*, 677 F. Supp. 2d 43, 46 (D.D.C. 2009) (the doctrine "applies even where it is alleged that the consular officer did not follow regulations"); *Chun v. Powell*, 223 F. Supp. 2d 204, 206 (D.D.C. 2002) (same).

But because of the claim brought by Maui Hope in this case, the Court need not decide whether it agrees that the doctrine extends that far. Maui Hope objects that the 2023 H-1B visa denial "rel[ied] exclusively on statements obtained during Mr. Hoshimov's [2022] CBP interview, which were made under documented conditions of exhaustion and stress." Opp'n 7–8. And it contends that the consular officer improperly "disregard[ed] substantial exculpatory evidence." Opp'n 8. According to Maui Hope, these defects amount to a violation of the governing Foreign Affairs Manual, which provides that officers may only conclude that a visa applicant misrepresented their intentions behind entering the United States upon "a finding that there is

direct or circumstantial evidence sufficient to meet the 'reason to believe' standard." Opp'n 7; 9 Foreign Affairs Manual 302.9-4(B)(3)(g)(1)(b). This claim is of the kind that "cannot be separated" from a challenge to the visa denial itself. *See Cevallos v. U.S. Dep't of State*, No. 22-cv-2602, 2023 WL 6276622, at *4 (D.D.C. Sept. 26, 2023).

As courts in this District have held, a claim challenging "what a consular officer chose to consider (or not) in denying a visa 'cannot be divorced' from judicial review of the denial itself." *Kolesnikov v. Blinken*, No. 23-cv-1675, 2024 WL 3638345, at *2 (D.D.C. Aug. 2, 2024) (quoting *Thatikonda v. DHS*, 21-cv-1564, 2022 WL 425013, at *6 (D.D.C. Feb. 11, 2022)). And here, Maui Hope's claims go "to the sufficiency of the evidence on which [Mr. Hoshimov's] visa determination was reached. While framed as a challenge to the process he received, the challenge goes to the basis of the decision, which is effectively a challenge to the decision itself." *Cevallos*, 2023 WL 6276622, at *4 (citation omitted). The Court sees no basis to distinguish between (1) a claim that a consular officer reached a decision using inadequate evidence, and (2) a claim that the officer reached the wrong decision. Both are barred by the doctrine of consular nonreviewability. *See, e.g.*, *Kolesnikov*, 2024 WL 3638345, at *2; *Cevallos*, 2023 WL 6276622, at *4. The Court is thus powerless to grant the relief that Maui Hope seeks in this case.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants' Motion to Dismiss, ECF No. 11. The Court also DENIES as moot Maui Hope's Motion to Strike, ECF No. 14.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   December 19, 2025